## SHREVEPORT v. COLE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 106.  Argued and submitted December 4, 1888. — Decided January 7, 1889.

Two " residents of Shreveport, Louisiana," sued in the Circuit Court of the United States for the Western District of Louisiana on a contract of that municipality, made in 1871, alleging, as the ground of Federal jurisdiction, that the constitution of Louisiana of 1879 had impaired the obligation of their contract. The municipality answered that it had been held by all the state courts that the provision of the constitution referred to did " not apply to contracts entered into prior to the adoption of the constitution of 1879." The Supreme Court of Louisiana prior to the commencement of this suit had in fact so decided: *Held*, that this suit was an attempt to evade the discrimination between suits between citizens of the same State and citizens of different States, established by the Constitution and laws of the United States, and that the Circuit Court was without jurisdiction.

A constitution, or a statute, is construed to operate prospectively only, unless, on its face, the contrary intention is manifest beyond reasonable question.

JACOBS and Smith filed their petition in the Circuit Court of the United States for the Western District of Louisiana, describing themselves as " residents of Shreveport, Louisiana," on the 11th day of February, 1882, against the city of Shreveport, "a municipal corporation, established by the State of Louisiana, situated in the parish of Caddo, in said State of Louisiana, and within said Western District," alleging it to be " justly indebted to petitioner in the sum of forty-seven thousand four hundred and sixty-six $\frac{31}{100}$ dollars, with five per cent per annum interest from Nov. 19th, 1871, as shown by itemized statement hereto annexed as part hereof," upon a written contract annexed and made part of the petition, for the macad-· amizing of Commerce Street in said city, whereby the city agreed to pay five $\frac{40}{100}$ dollars for each square yard of macada-.mizing, and sixty-five cents per cubic yard for grading, which amounted, upon completion of the work, to ninety-eight thousand one hundred and ninety-two $\frac{40}{100}$ dollars, in which amount the city became indebted to petitioners; and that the sum of thirteen thousand four hundred and seventy-six $\frac{32}{100}$ dollars was paid thereon by property owners, and a warrant for three thousand two hundred and thirty-five $\frac{25}{100}$ dollars unpaid tax was also received by petitioners, leaving the indebtedness eighty-one thousand four hundred and eighty-six $\frac{92}{100}$ dollars. That by the terms of the contract the city obligated itself "to pay the amount of its indebtedness arising thereunto out of funds realized from the collection of wharfage dues, to be received by petitioners when paid by or collected from steamboats at the wharves of Shreveport, until the entire amount of such indebtedness under said contract was fully paid," and had collected and paid over such wharfage dues up to December 20th, 1878, to the amount of thirty-four thousand and fourteen $\frac{61}{100}$ dollars, leaving a balance due of forty-seven thousand four hundred and sixty-six $\frac{31}{100}$ dollars. The petition then proceeded as follows :

"Petitioners allege that since the 20th day of December,

A.D. 1878, steamboats have arrived at the port of Shreveport from time to time up to present date, landed at the wharves of said city, and became thereby indebted for wharfage dues, collectible from such steamboats, their masters and owners, amounting in the aggregate to a large sum, say twelve thousand dollars, which should have been collected and paid over to petitioners by said city ; but your petitioners aver that since the 20th December, A.D. 1878, said city has failed, neglected, and refused to collect any wharfage dues from steamboats landing at its wharves, and has failed to pay petitioners the amount due them under said contract or any part thereof.

"That on the 15th February, A.D. 1879, and on sundry days before and since said date, petitioners made amicable demand on said city to comply with its obligations under said contract by collecting and paying over to petitioners said wharfage dues, which said demands were by said city utterly disregarded.

" Petitioners allege that in consequence of the neglect and refusal of said city to collect and pay over to them said wharfage, and by its default in complying with the terms of the said contract, the entire balance due thereunder, viz., said sum of forty-seven thousand four hundred and sixty-six 31-100 dollars, with interest, as hereinbefore claimed, became due by and exigible from said city.

" Petitioners allege amicable demand in vain.

" They allege further that the law of the State of Louisiana, so far as same had any bearing on or relation to the said contract between them and said city and to the rights and obligations therefrom resulting, was by operation of law impliedly part of said contract, and there was an implied contract between said city and petitioners that, in event of failure on part of either of the contracting parties to comply with the terms of said contract, the obligations resulting from and under said contract might be judicially enforced, and that under provisions of the law of Louisiana existing at date of said contract, petitioners had adequate remedies for the enforcement of their rights thereunder.

" But petitioners allege that Article 208 of the Constitution

of the State of Louisiana, adopted July 23d, A.D. 1879, and ratified by the people of said State on the first Tuesday of the month of December, A.D. 1879, has impaired the obligation of said contract by depriving your petitioners of all remedies for the enforcement of same, in this, viz., by limiting municipal taxation throughout said State for all purposes whatever to ten mills on the dollar of valuation.

"Petitioners represent that the assessed value of all property subject to tax by said city is one million eight hundred and fifty-three thousand eight hundred and twenty dollars; that the tax thereon, at rate of ten mills on the dollar, amounts to the sum of eighteen thousand five hundred and thirty-eight and 20-100 dollars; that the amount which the city is authorized to levy for license tax on trades, professions, and occupations does not exceed for any one year the sum of seventy-five hundred dollars.

"That said city has no property which can be seized under execution, and no revenues, except such as are derived from taxation; that the entire revenues of said city for any one year do not exceed the sum of thirty-one thousand dollars, an amount not more than sufficient for its alimony, and which must be appropriated for that purpose, and in consequence of said constitutional limitation, if same be valid and operative, no means exist under the law of Louisiana by which said city can raise funds wherewith to pay, or be compelled to pay, its just debts.

"Petitioners allege that Article 208, so far as the same limits municipal taxation, is as to them null and void, because it violates the tenth section of the first Article of the Constitution of the United States, which prohibits the State of Louisiana (with all other States) from passing any law impairing the obligation of contracts.

"That they are entitled to have said Article 208 of the constitution of the State of Louisiana declared null and void, so that they may have some remedy by means of which to compel said city to pay its indebtedness to them; that the case herein presented arises under the Constitution of the United States, and that your honorable court has jurisdiction thereof.

"The premises considered, petitioners pray that the city of Shreveport be cited to answer hereto; that, after all legal notices and delays, they have judgment against said city, declaring said Article 208 of the constitution of the State of Louisiana violative of the Constitution of the United States, null and void, and condemning said city to pay to petitioners said sum of forty-seven thousand four hundred and sixty-six 31-100 dollars, with legal interest from November 19, A.D. 1879, and all costs. They pray for all orders and decrees necessary, and for general relief in the premises."

To this petition the city of Shreveport filed on May 2, 1882, its exceptions and plea to the jurisdiction, stating "that there is no law, ordinance, or constitutional provision in Louisiana which would impair the obligation of the alleged contract between the plaintiffs and defendant, and no probability of the courts of the State throwing any obstacles in the way of the execution of a judgment in their favor if one should be obtained: On the contrary, all the state courts, from the highest to the lowest, in numerous decisions have held that the constitutional limitation of municipal taxation does not apply to contracts entered into prior to the adoption of the constitution of 1879, which this is admitted to be," which were overruled February 26, 1883, and on March 1, 1883, the city filed its answer upon the merits.

Trial being had, the court charged the jury, among other things: "That if the jury find from the evidence the income of the city of Shreveport, which is collected under provision, Art. 208, is insufficient to pay more than the amount necessary for alimony, and that the operation of Art. 208 will prevent city from collecting taxes sufficient to pay its debts, then as to any debt contracted prior to the adoption of state constitution of 1879, said Art. 208 violates the Constitution of the United States, and is null and void."

Verdict was returned March 13th in these words: "We, the jury, find the following judgment, to wit: That the plaintiffs in this case have judgment against the defendant in the sum of $13,249.30, that being the amount of wharfage due the city of Shreveport, as proven on the trial to this date, reserving

all the rights to the plaintiffs for the balance claimed by them."

Whereupon this judgment was rendered : "In this case, by reason of the law and evidence, and the verdict of the jury being in favor of the plaintiffs, Benj. Jacobs and Joseph R. Smith, it is ordered, adjudged, and decreed that the plaintiffs do have and recover of the defendant, the city of Shreveport, the full sum of thirteen thousand two hundred and forty-nine and 30-100 dollars, with 5 per cent per annum interest thereon from the 17th day of February, 1882, and all costs of suit, said amount being wharfage dues which should have been collected by the defendant and paid over to plaintiffs up to March 13th, 1883. It is further ordered, adjudged, and decreed that said amount of $13,249.30 when paid is to be a credit on the amount due by defendant to the plaintiffs as claimed in their petition ; and it is further ordered and decreed that the rights of plaintiffs for the balance due them as claimed are reserved to them."

From which judgment the city of Shreveport prosecuted the writ of error herein.

*Mr. Charles. W. Hornor,* for plaintiff in error.

*Mr. T. Alexander* and *Mr. N. C. Blanchard,* for defendants in error, submitted on their brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Unless this suit was one " arising under the Constitution or laws of the United States," the Circuit Court had no jurisdiction ; and if it did not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or some law, upon the determination of which the recovery depended, then it was not a suit so arising. *Starin* v. *New York,* 115 U. S. 248, 257; *Gold Washing and Water Co.* v. *Keyes,* 96 U. S. 199.

The case at bar was in effect an action at law to recover a balance alleged to be due the petitioners or plaintiffs upon a

contract with the defendant, and the maintenance of the, cause of action involved no Federal question whatever, nor is any such indicated in the judgment rendered. But the jurisdiction seems to have been rested upon the averments in plaintiffs' petition, that under article 209 of the state constitution of 1879, providing that "no parish or municipal tax for all purposes whatsoever shall exceed ten mills on the dollar of valuation," the city of Shreveport, being so situated as to need all the revenue from such a tax, cannot raise funds to pay its just debts; that, therefore, plaintiffs are deprived by that article, "if same be valid and operative," of the remedy of enforcing payment by the levy of taxes, although their contract was entered into in 1871; and that so said article impairs the obligation of such contract. This contention, however, required the Circuit Court to assume that the courts of Louisiana would hold that the city could lawfully avail itself of the constitutional limitation in question as a defence to the collection by taxation of the means to liquidate the indebtedness, notwithstanding that would be to apply it retrospectively, to the destruction of an essential remedy existing when the contract was entered into, whereas the presumption in all cases is that the courts of the States will do what the Constitution and laws of the United States require. *Chicago and Alton Railroad* v. *Wiggins Ferry Co.*, 108 U. S. 18; *Neal* v. *Delaware*, 103 U. S. 370, 389. And we find in accordance with that presumption that the Supreme Court of Louisiana holds, and had held prior to the commencement of this suit, that article 209 "must have a rigid enforcement with regard to all creditors whose rights are not protected by the Constitution of the United States, and with regard to all future operations of the city government of every kind whatever. But it is perfectly clear that the rights of antecedent contract creditors are protected by the Constitution of the United States, and they are entitled to have them enforced 'in all respects as if' this provision of the Constitution 'had not been passed.' *Von Hoffman* v. *City of Quincy*, 4 Wall. 535. The fact that the act of the State is a constitutional provision instead of a mere legislative act does not affect the case. *Railroad Co.* v. *McClure*, 10 Wall.

511, 515. It is apparent, therefore, that whatever percentage of taxation may be required to meet the maturing obligations in interest or principal of antecedent contract creditors must, in any and all events, be levied." *Moore* v. *City of New Orleans,* 32 La. Ann. 726, 747.

Constitutions as well as statutes are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question. There is nothing on the face of article 209 evidencing an intention that it should be applied to antecedent contracts, and the highest tribunal of the State has declared that it cannot be so applied. It is impossible, under these circumstances, to sustain the jurisdiction of the Circuit Court upon the ground, not that the city had been, but that it might perhaps be, allowed to interpose to defeat the enforcement, by the appropriate means, of payment of an alleged indebtedness, a constitutional provision inapplicable by the ordinary rules of law, and so determined to be by the deliberate decision of the state Supreme Court.

Nor can it be held that a dispute or controversy as to the effect of the Constitution of the United States upon article 209 of the constitution of the State was involved in determining in this action whether the defendant was indebted to the plaintiffs, and if so, in what amount.

The prayer of the petition was that judgment might be rendered for the amount claimed, and also that article 209 might be declared null and void; and some considerations supposed to bear upon the latter subject were addressed to the jury by the learned judge who presided upon the trial, to which the verdict made no response in terms; but it does not appear that an order for the assessment of taxes to pay the amount awarded, or for any supplementary proceedings of like nature, to the entry of which said article might in any view be claimed to be an obstruction, was authorized by statute to be made part of the judgment in such a case as this. And the judgment was simply for the recovery of so much money, to be thereafter collected as provided by law.

When, in the instance of a judgment rendered on contract

in a state court, remedies for its collection existing at the time of the making of the contract, are taken away, in substance, by state constitution or statute, and the deprivation enforced by the final judgment of the state courts, a writ of error under § 709 of the Revised Statutes enables this court to vindicate the supremacy of the Constitution and laws of the United States and administer the proper remedy; but had this record in its present shape come before us in that way even, we should have had no alternative save to dismiss the writ.

In cases originally brought in the Circuit Court, or by removal from a state court, it is made the duty of the Circuit Court to dismiss or remand the same whenever it appears that the suit does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that the parties to the suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable.

As remarked in *Bernards Township* v. *Stebbins*, 109 U. S. 341, 353, it has been the constant effort of Congress and of this court to prevent the discrimination in respect to suits between citizens of the same State and suits between citizens of different States, established by the Constitution and laws of the United States, "from being evaded by bringing into Federal courts controversies between citizens of the same State." We regard this suit as an evasion of that character.

*The judgment of the Circuit Court is reversed and the cause remanded, with directions to dismiss the petition.*