QUESTIONS:
Is a resident of a Sunland Training Center who has reached his eighteenth birthday eligible to register and vote in elections:
1. When there exists an outstanding order from a county or circuit court specifically declaring the resident incompetent?
2. When the resident has been received for admission pursuant to the provisions of s. 393.021, F.S.?
3. When the resident has been received for admission pursuant to the alternative s. 393.031, F.S.?
SUMMARY:
A resident of a Sunland Training Center or residential facility who has reached his eighteenth birthday and is otherwise qualified to vote is eligible to register for, and vote in, an election under the provisions of Art. VI, s. 4, of the 1968 Florida Constitution, provided such person has not been adjudicated mentally incompetent pursuant to, or in accordance with, the provisions of ss. 393.04, 393.12, and 744.31, F.S., as amended by Ch. 73-308 and 73-334, Laws of Florida.
No person who has been adjudicated to be mentally incompetent may vote until such disability has been removed or restoration of mental competency has been legally effected pursuant to the provisions of s. 744.31, F.S. (as amended by Ch. 73-334, Laws of Florida), or prior provisions of law relating thereto.
Admission to a Sunland Training Center under the provisions of s. 393.021 or s. 393.031, F.S., as amended by Ch. 73-308, Laws of Florida, does not disqualify any person, otherwise qualified to vote, from voting in an election unless such person has been adjudicated to be mentally incompetent in separate legal proceedings prescribed by law, as set forth in s. 393.12, F.S. 1973.
AS TO QUESTION 1:
Article VI, s. 4, State Const., provides in part that "No person . . . adjudicated in this or any other state to be mentallyincompetent, shall be qualified to vote or hold office until . . . removal of disability." (Emphasis supplied.)
Previously, Art. VI, s. 4, State Const. 1885 provided in part that "No person under guardianship, non compos mentis or insane shall be qualified to vote at any election. . . ."
A comparison of the two provisions set forth above shows that the reference to persons under guardianship has been omitted and that the requirement for removal of disability for those previously declared mentally incompetent has been added to the constitutional provision. See Analysis of Proposed Revision, Draft of Proposed 1968 Constitution, at p. 24.
The phrase "until . . . removal of disability" in the 1968 Constitution, supra, refers and relates to the person "adjudicated . . . to be mentally incompetent" in the preceding clause or phrase and must mean removal of such mental disability or restoration to mental competency by some appropriate legal proceedings according to law.
The prime purpose in construing a constitutional provision is to ascertain what intent the framers and the electorate had in its adoption; and it is reasonable to assume that, in adopting the 1968 Constitution, the intent of the electorate was that the only disqualification from voting was the conviction of a felony or adjudication of mental incompetency and that such disqualification should continue until such time as such persons so convicted or adjudicated incompetent had their civil rights restored or their mental competency restored pursuant to law. In re Advisory Opinion to the Governor, 223 So.2d 35 (Fla. 1969); City of St. Petersburg v. Briley, Wild Assoc., Inc., 239 So.2d 817 (Fla. 1970); seealso 16 C.J.S. Constitutional Law ss. 16 and 31.
When the state's Constitution prescribes the disqualifications for voting in express self-executing terms and such provisions are not in conflict with the federal constitution, the legislature is powerless to modify such provisions or to create other disqualifications than those found in the organic law. Neither may it restrict or modify the constitutionally prescribed qualifications or requirements of electors. Riley v. Holmer,131 So. 330 (Fla. 1930); Thomas v. State, 58 So.2d 173 (Fla. 1952); Bowden v. Carter, 65 So.2d 871 (Fla. 1953). See also 16 C.J.S.Constitutional law s. 53; cf. Hancock v. Board of Public Instruction, 158 So.2d 519 (Fla. 1963). The Constitution having specified only the two aforesaid disqualifications for voting, all others are excluded under the rule of construction, expressiounius est exclusio alterius. Franks v. Davis, 145 So.2d 228 (Fla. 1962); Lanier v. Tyson, 147 So.2d 365 (2 D.C.A. Fla., 1962).
In order to properly consider question 1, we must assume that at the time the individual was admitted to a Sunland Training Center he was admitted pursuant to a court order issued by a county judge or, after January 1, 1973, a circuit court judge, which included an adjudication or finding by such a court that the individual was in fact mentally incompetent because of retardation, and any such order would be accompanied by the judgment of incompetency. See s.393.11, F.S. 1971 and ss. 393.11 and 393.12, F.S., as amended by Ch. 73-308, Laws of Florida.
Section 97.041, F.S., provides in part:
"97.041 Qualifications to register. — * * * * * (5) The following persons are not entitled to vote: * * * * * (c) Persons adjudicated mentally incompetent in this or any other state and who have not had their competency restored pursuant to law."
Since former s. 393.12, and currently s. 744.31(10), F.S., as amended by Ch. 73-133, and s. 393.12(2) and (3), as now amended by Chs. 73-308, and 73-334, supra, provide the procedure to be followed for the restoration of mental competency, unless such restoration of mental competency is accomplished in accordance with the procedures so described, the outstanding order adjudicating a person to be mentally incompetent would appear to be controlling regardless of the age of the person at the time he was admitted to the Sunland facility and who has thereafter reached majority or the voting age of eighteen without adjudication removing his disability of mental incompetency.
However, in the case of a child committed to a Division of Retardation facility, when such child reaches the age of majorityhe shall be given an additional hearing to determine hiscompetency at that time. See s. 393.11, F.S. 1971. The results of this hearing are then submitted to the county judge who shall then either discharge the person or recommit the person to the division in the same manner as an initial commitment. See s. 393.11(3). Provision for such an identical, additional hearing for a child reaching the age of majority (eighteen years of age) has been, by Ch. 73-308, incorporated in amended s. 393.11(2), F.S.
Since such an additional hearing on the issue of incompetencyshall be held in the case of a minor child committed to the Division of Retardation, the mandatory connotation of the word "shall" requires that the additional hearing be conducted for continued commitment, or the person is to be discharged. Neal v. Bryant, 149 So.2d 529 (Fla. 1962); Lomelo v. Mayo, 204 So.2d 550
(Fla. 1967); and cf. Brooks v. Anastasia Mosquito Control District., 148 So.2d 64 (1 D.C.A. Fla., 1963).
As amended by Ch. 73-308, s. 393.12(1), now provides that the issue of incompetency shall be a separate and distinct procedure from that of a determination of the appropriateness of admission to nonresidential services or residential care for mental retardation.
Section 6, Ch. 73-308, Laws of Florida, further provides a caveat, that no acceptance of a mentally retarded person for residential care by the Division of Retardation before January 1, 1973, shall be deemed unlawful, but the department shall within ninety days of the enactment of s. 6 review the status of all persons presently admitted to residential care to insure that the requirements of Ch. 393, F.S., as amended by Ch. 73-308 have been fully complied with. If such admissions are not valid under the provisions of Ch. 73-308, supra, the person shall be discharged or appropriately recommitted according to law.
Under the provisions of ss. 393.01(2) and 393.12(2), as amended by Ch. 73-308, admission to a residential program of the Division of Retardation does not create a status of guardianship unless a separate adjudication of incompetency has been made pursuant to s. 744.31, F.S., as amended by Ch. 73-334, Laws of Florida, and insofar as these procedures are applicable to the mentally retarded, the provisions shall be read in pari materia with the amended provisions of Ch. 393 as provided by Ch. 73-308, supra.
To the extent that Ch. 73-334, supra, is a reviser's bill relating solely to the judiciary (to conform statutory language to the terminology of Revised Art. V of the Constitution) and Ch. 73-308, supra, effective October 1, 1973, relates to the Division of Retardation, the provisions of Ch. 73-308, supra, would be controlling insofar as the intent of the legislature is concerned relating to the interests of mentally retarded persons, as the reviser's bill is intended merely to purify existing statutory law rather than change the substantive law on a particular subject.Cf. Jones v. Christina, 184 So.2d 181, 184 (Fla. 1966).
In view of the legislative directive in s. 6, Ch. 73-308, supra, that the Department of Health and Rehabilitative Services shall review the status of all persons presently admitted to residential care provided by the Division of Retardation to insure that the requirements of that statute have been fully complied with, I am of the opinion that a resident of a Sunland Training Center, under an outstanding court order adjudicating such a person to be mentally incompetent, is prohibited from registering and voting in an election under Art. VI, s. 4, State Const., and s.97.041(5)(c), F.S., until such time as the disability of mental incompetency is removed pursuant to law as prescribed in ss.393.11(2) et seq., and 744.31, F.S.
AS TO QUESTIONS 2 and 3:
Pursuant to s. 2, Ch. 73-308, Laws of Florida, the procedures for voluntary admission to services and facilities provided by the Division of Retardation contained in former ss. 393.021 and 393.031, F.S., have been combined into an amended s. 393.021. Therefore, questions 2 and 3 will not be considered separately.
Sunland Training Centers and residential facilities are recognized by the legislature as facilities for the care, habilitation, and rehabilitation of retarded persons who have subaverage general intellectual functioning which originates during the developmental period and is associated with impairment of adaptive behavior. See s. 393.0111, F.S.
Under former s. 393.021, F.S., applications for admission to any of the residential facilities in this state are made to the county court judge in the county where the applicant resides. The county court judge, upon receiving the application, merely opened a file in the name of the applicant and forwarded the original and two copies of such application to the director of the Division of Retardation or his designee.
Likewise, former s. 393.031, F.S., provided an alternative method for admission in cases where the applicant is eighteen years of age or older and he or his parent or legal guardian applies for such admission.
Under the above provisions, it appears that voluntary admission is contemplated for the person in lieu of an involuntary commitment to the Division of Retardation following a judicial proceeding involving notice and hearing as provided by s. 393.11 (amended by s. 4, Ch. 73-308 and Ch. 73-334, supra).
Under the provisions of former ss. 393.021 and 393.031, supra, no judicial proceedings were involved or authority exercised beyond the opening of a file on the person or a check as to the person's age. This ministerial function of county court judges has now been eliminated by the provisions of amended s. 393.021, supra, providing for application review by an evaluation team of the Division of Retardation.
Mere admission to a Sunland facility, without any adjudication of mental incompetency, would not remove the presumption that such a person is competent. Travis v. Travis, 87 So. 762 (Fla. 1921). Granted that under former s. 393.04, F.S. 1971, the department was declared to be the legal guardian and custodian of all persons admitted to Sunland Centers and residential facilities, such a legal guardianship status created by a voluntary admission no longer exists as a result of the provisions of Ch. 73-308, supra, amending ss. 393.01(2) and 393.04, F.S. The amended statutes in summary now provide that voluntary and involuntary admissions only create a responsibility on the part of the Division of Retardation as opposed to a guardianship status which may only arise or be created if the person admitted to the Sunland facility has been adjudicated incompetent as prescribed by statute and no alternative guardian is available or if the person is under the statutory age of majority and no alternative guardian is available. See also ss. 744.31 and 393.12, F.S. (amended by s. 11, Ch. 73-133 and s. 30, Ch. 73-334, Laws of Florida).
It should be noted here in passing that, in view of the fact that guardianship status for the minor may be created in the circumstances prescribed by the statute, it appears that when we consider the requirement for a separate hearing on a child reaching the age of majority, his admission as a child merely authorizes a guardianship situation by reason of tender age as opposed to any basis of mental incompetency adjudicated in and by a separate and distinct legal proceeding.
Therefore, in view of the above and in consideration of matters previously discussed in question 1, I am of the opinion that, although s. 97.041(5)(b), supra, provides that a person under guardianship is not entitled to vote, when this provision is read in the light of the changes in the controlling constitutional provisions (Art. VI, s. 4, State Const.), as discussed in answer to your first question, a resident at a Sunland Training Center, admitted under either former ss. 393.021 or 393.031, supra, or as they have now been amended by Ch. 73-308, supra, is not disqualified from voting (if otherwise qualified) unless and until he has been adjudicated mentally incompetent in a proceeding prescribed in s. 744.31, F.S., as required by s. 393.12, F.S. 1973.